IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL MONROE,

                       Plaintiff,                Civil Action No.
                                              9:17-CV-1050 (GTS/DEP)
     v.

SCOTT KOCIENSKI and BRIAN TYO,

                       Defendants.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

MICHAEL MONROE, *Pro Se*
126 Halgren Crescent
Haverstraw, NY 12821

FOR DEFENDANTS:

HON. BARBARA UNDERWOOD      ERIK BOULE PINSONNAULT, ESQ.
New York State Attorney General   Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     This is an action brought pursuant to 42 U.S.C. § 1983, in which *pro*

*se* plaintiff Michael Monroe, a former New York State prison inmate,

alleges that two corrections officers at the facility in which he was confined

at the relevant times violated his right to freely exercise his religion, as guaranteed by the First Amendment to the United States Constitution. In response to plaintiff's complaint, defendants have moved for dismissal of his claims based upon his alleged failure to exhaust available administrative remedies prior to commencing suit. For the reasons set forth below, I recommend that defendants' motion be denied.

I.    BACKGROUND[1]

Prior to his release on or about October 24, 2018, *see* Dkt. No. 41, plaintiff was held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 26. At the times relevant to his claims, plaintiff was confined in the Franklin Correctional Facility ("Franklin"), located in Malone, New York. *Id.* Plaintiff is a practicing Muslim. *Id.*

At 9:00 a.m. on June 2, 2017, defendant Corrections Officer Scott

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Although defendants submitted documentation related to plaintiff's grievance in support of their motion to dismiss, *see* Dkt. No. 38-2 at 2-6, that documentation has not be considered since a motion to dismiss tests only the sufficiency of plaintiff's complaint together with any documents attached or referred to in that complaint. *See* pp. 6-8, *ante*.

Kocienski summoned plaintiff from his housing unit for the purpose of requiring him to submit to urine drug testing. Dkt. No. 26 at 4. Although plaintiff informed defendant Kocienski that he was a fasting because it was the religious month of Ramadan, the officer escorted him to the medical department and informed him that if he refused to drink water and provide a urine sample, he would be issued a misbehavior report that would result in him being confined to the facility's special housing unit ("SHU"). *Id.* Plaintiff then broke his fast and complied with defendant Kocienski's directive so that he could participate in Ramadan services. *Id.*

On June 14, 2017, defendant Corrections Officer Bryan Tyo escorted plaintiff from his housing unit for another urine test. Dkt. No. 26 at 4. Much like his interaction with defendant Kocienski, plaintiff informed defendant Tyo that he was fasting in observance of Ramadan. *Id.* Defendant responded, stating that if plaintiff refused to provide a urine sample, he would be issued a misbehavior report. *Id.* Plaintiff again broke his fast and complied with defendant Tyo's order so that he could participate in Ramadan services. *Id.*

Plaintiff alleges that he filed a grievance regarding these two incidents, and that he appealed to the superintendent at Franklin, "and

3

also to Albany."[2] Dkt. No. 26 at 5. Plaintiff claims that he "never received an answer back from Commissioner Annucci or anyone from his office." *Id.*

II.    PROCEDURAL HISTORY

Plaintiff's complaint in this action, which is dated September 15, 2017 and was received by the court in an envelope postmarked on September 19, 2017, was filed with the court on September 21, 2017. Dkt. No. 1; Dkt. No.1-1. The complaint was accompanied by plaintiff's motion for leave to proceed *in forma pauperis* ("IFP"), which was deemed by the court to be incomplete. Dkt. Nos. 2, 3, 4.

Plaintiff subsequently filed a properly completed IFP application on November 13, 2017. Dkt. No. 10. On December 27, 2017, Chief District Judge Glenn T. Suddaby issued a decision and order in which he granted plaintiff's revised request for IFP status and reviewed the sufficiency of his complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11. In that decision, Chief Judge Suddaby dismissed several of plaintiff's claims, leaving a First Amendment free exercise claim against individuals

---

[2]    Plaintiff's allegations are consistent with the documentation submitted by defendants in support of their motion to dismiss. *See generally* Dkt. No. 38-2. Defendants' submission reveals that plaintiff filed a grievance on June 14, 2017, which was stamped as having been received on June 15, 2017. *Id.* at 3. It further shows that the Franklin Superintendent denied the grievance on July 6, 2017, and that plaintiff appealed the grievance to the Central Office Review Committee ("CORC") on the following day. *Id.* at 4.

identified by plaintiff in his complaint only as "Officer K" and "Officer T." *Id.*
With the assistance of the Office of the New York State Attorney General,
pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam),
the two remaining defendants were identified as Scott Kocienski and Brian
Tyo. Dkt. No. 24. Plaintiff was thereafter directed to file an amended
complaint with the correct identities of "Officer K" and "Officer T." Dkt. No.
25. That amended complaint was filed with the court on June 13, 2018.
Dkt. No. 26. On July 20, 2018, Chief Judge Suddaby concluded that
plaintiff's First Amendment free exercise claims required a response from
defendants. Dkt. No. 27.

In lieu of answering, defendants have filed a motion to dismiss
plaintiff's complaint on the ground that his federal claims are barred by
virtue of his failure to exhaust the administrative remedies available to him
before commencing suit. Dkt. No. 38. Plaintiff was directed to respond to
the motion by November 6, 2018, but failed to submit any opposition prior
to that deadline. Defendants' motion, which is now ripe for determination,
has been referred to me for the issuance of a report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York
Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

5

III.    DISCUSSION

    A.    Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292,

300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed*

7

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a

plaintiff proceeds *pro se*, a court is obliged to construe his pleadings

liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r*

*of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y.

2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

> B.    Exhaustion of Administrative Remedies

Defendants acknowledge that after filing a grievance and seeking

review by the superintendent at Franklin, plaintiff appealed to the CORC

on July 10, 2017. Dkt. No. 38-1; *see also* Dkt. No. 26 at 5. They contend,

however, that because plaintiff commenced this action prior to the CORC

rendering a determination at the third step of the Inmate Grievance

Program in connection with that appeal, he failed to fully exhaust his

administrative remedies prior to commencement. *Id.* Plaintiff has not

responded to defendants' motion.

> 1.    Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[3]

---

[3]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[4] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the committee's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a

---

[4]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

written decision within a certain number of days after receipt of the

grievant's appeal.[5]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS

Central Office Review Committee ("CORC"), which must be taken within

seven days after an inmate receives the superintendent's written decision.

7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written

decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. §

701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment,

the grievance is forwarded directly to the superintendent, bypassing the

IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has

twenty-five days from the date of its receipt to render a decision. 7

N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's

decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. §

701.8(h).

As can be seen, at each step of the IGP process, a decision must be

rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the

IGRC and/or superintendent do not timely respond, an inmate is permitted

---

[5]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

11

to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which

12

a court could find that internal administrative remedies are not available to prisoners under the PLRA.[6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to

---

[6]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).[7]

### 2. Analysis

According to the documents submitted in support of defendants' motion, on June 14, 2017 plaintiff filed a timely grievance, which was assigned No. FKN-13503-17, regarding defendants' actions. Dkt. No. 38-2 at 3. It appears that plaintiff's grievance may have bypassed the IGRC and was referred directly to the facility's superintendent because the superintendent issued a determination on July 6, 2017 in which he concluded that "[b]ased on the information received by security, and acknowledging the fact that the grievant did not advise the staff that he was fasting, this grievance should be denied as having no merit." *Id.* at 4. On July 7, 2017, plaintiff signed the appeal statement to the CORC, and the grievance clerk signed the appeal on July 10, 2017. *Id.* Although the

---

[7]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

action was commenced on September 19, 2017, *see* Dkt. No. 1-1, the

CORC did not issue a determination in connection with plaintiff's appeal

until August 29, 2018, more than one year after the filing of plaintiff's

appeal with that body. Dkt. No. 38-2 at 5.

      Because defendants' motion is brought pursuant to Rule 12(b)(6),

unless it is converted to a motion for summary judgment, the court may

not properly consider the extrinsic materials submitted by defendants.

*Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000*); Fonte v. Bd.*

*of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir.1988). All

that the court has before it at the present time related to plaintiff's efforts to

exhaust remedies is the following statement from his amended complaint:

> I filed grievances shortly thereafter pertaining
> to these urinalysis test and appealed
> them to the Superintendent of Franklin
> Correctional Facility and also to Albany. I never
> received an answer back from Commissioner
> Annucci or anyone from his office.

Dkt. No. 26 at 5. Accepting plaintiff's allegation as true, the court is unable

to conclude definitively that plaintiff failed to exhaust administrative

remedies prior to commencing this action.

      It is true that the face of plaintiff's amended complaint suggests that

his grievance was pending, and therefore unexhausted, at the time this

action was commenced. While according to defendants that the CORC

ultimately ruled on plaintiff's grievance, it is well-established that "post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced[.]" *Shepherd v. Lempke*, No. 9:10-CV-1524, 2017 WL 1187859 (N.D.N.Y. Mar. 30, 2017) (collecting cases); *accord Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)); *see also Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008) (observing that subsequent exhaustion "is not enough to save his suit, because [the inmate] is required to have properly exhausted before he sues."); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012).

However, the finding that plaintiff did not fully exhaust the IGP process prior to commencement does not end the court's inquiry. Rather, the court must also consider whether the IGP was "unavailable" to plaintiff. *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). Plaintiff's amended complaint provides no information concerning how long his appeal was pending before the CORC, and the court is therefore unable to make an intelligent assessment as to whether the IGP was truly available to the plaintiff within the meaning of *Ross* and *Williams*. In that respect, this case is illustrative of the quagmire that has resulted in the wake of the

Second Circuit's decision in *Williams*. In particular, *Williams* implies that in situations where the regulations fail to address a grievant's particular situation, DOCCS's regulatory scheme is " 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].' " *Williams*, 829 F.2d at 124 (quoting *Ross*, 136 S.Ct. at 1859). This is an issue better decided on a more fully developed record.[8]

There is another consideration that militates in favor of denial of defendants' motion at this early juncture. Rule 1 of the Federal Rules of Civil Procedure counsels that "the [Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every

---

[8]    I note that in *High v. Switz*, No. 9:17-CV-1067, 2018 WL 3736794 (N.D.N.Y. Jul. 9, 2018) (Stewart, M.J.) *report and recommendation adopted by* 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.), Magistrate Judge Daniel J. Stewart recently observed that "[c]ourts within the Second Circuit are split regarding whether a failure to respond by [the] CORC constitutes unavailability excusing a plaintiff's failure to exhaust." *Id.* at *4 (collecting both pre- and post-*Williams* cases). In resolving whether administrative remedies were "available" at step three when the CORC failed to respond within the thirty-day timeframe contemplated by the regulations, he observed that the regulations " 'do not describe a mechanism' for appealing or advancing a grievance when a grievant does not receive a response from the CORC, as there is no next step to which a grievant may appeal.' *Id.* at *5 (quoting *Williams*, 829 F.3d at 124). Judge Stewart therefore concluded that because, among other factors, the plaintiff failed to receive a response from the CORC within the timeframe prescribed by the statute, plaintiff's administrative remedies, while not fully exhausted, were unavailable. *Id.*; *see also Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *4 (W.D.N.Y. Nov. 30, 2016) ("[A]fter the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file this action.").

action and proceeding." Fed.R.Civ.P. 1. If the court were to dismiss plaintiff's complaint for failure to exhaust, that dismissal would be without prejudice. Since the CORC has now apparently ruled on plaintiff's appeal, he has fulfilled his exhaustion obligation and could commence a new action raising the same claims as those present in this case. Since the incidents complained of occurred in June of 2017, such a new action would present no statute of limitations issues since plaintiff's claims are subject to a three-year limitation period. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citing *Owens v. Okure*, 488 U.S. 235, 250-51, (1989); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). Accordingly, to dismiss this action based upon the alleged failure of plaintiff to exhaust available administrative remedies, particularly in light of the uncertainty surrounding the chronology of events and whether the IGP was truly available to him, would run afoul of Rule 1.

In sum, at this early procedural juncture, and in deference to plaintiff's status as a *pro se* litigant, I am not prepared to recommend that plaintiff's complaint be dismissed on the procedural ground raised in defendants' motion.[9] Instead, I believe that the exhaustion argument

---

[9]    This result is also consistent with the court's preference that matters be resolved on their merits, rather on the basis of procedural shortcomings. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).

should be deferred for later consideration on a motion for summary

judgment or an evidentiary hearing pursuant to *Messa v. Goord*, 652 F. 3d

305 (2d Cir. 2011).

IV.    SUMMARY AND RECOMMENDATION

      Although from plaintiff's amended complaint it appears likely that he

failed to exhaust his administrative remedies before commencing this

action, I find that pursuant to the Second Circuit's decision in *Williams*, the

court is constrained to conclude that a question exists as to whether those

remedies were unavailable to plaintiff at the relevant times. Accordingly, it

is respectfully

      RECOMMENDED that defendants' motion to dismiss plaintiff's

complaint (Dkt. No. 38) be DENIED.

      NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report. Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this

report.[10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[10]    If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     November 14, 2018
           Syracuse, New York

2018 WL 3730175
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,

v.

PA SWITZ, et al., Defendants.

9:17-CV-1067 (LEK/DJS)
|
Signed 08/06/2018

**Attorneys and Law Firms**

Javon High, Long Island City, NY, pro se.

Erik Boule Pinsonnault, Katie E. Valder, New York State Attorney General, Albany, NY, for Defendants.

**ORDER**

Lawrence E. kahn, U.S. District Judge

## I. INTRODUCTION
**\*1** This matter comes before the Court following a report-recommendation filed on July 6, 2018, by the Honorable Daniel J. Stewart, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 24 ("Report-Recommendation"). Defendant timely objected to the Report-Recommendation. Dkt. No. 23 ("Objection").

## II. LEGAL STANDARD
Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at \*2 (S.D.N.Y.

Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

## III. DISCUSSION
The Report-Recommendation analyzed whether Plaintiff failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act ("PLRA"). R. & R. at 6–12. Judge Hummel concluded that, although Plaintiff failed to exhaust his administrative remedies, this failure was excused because the Central Office Review Committee ("CORC") of the New York Department of Corrections and Supervision ("DOCCS") substantially delayed in responding to Plaintiff's appeal of his prison superintendent's denial of his grievance. Id.

Defendant objects to the Report-Recommendation, asserting that CORC's delayed response to Plaintiff's grievance did not excuse his failure to exhaust administrative remedies. Obj. at 1.[1] However, Defendant raised this argument in its memorandum in support of its motion to dismiss, Dkt. No. 13-1 ("Memorandum") at 5, and again in its reply brief, Dkt. No. 18 ("Reply") at 1.[2] Defendant's Objection is, therefore, "a mere reiteration of an argument made to the magistrate judge." Barnes, 2013 WL 1121353, at \*1. Accordingly, the Court reviews the Report-Recommendation for clear error, and finds none.

## IV. CONCLUSION
**\*2** Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3730175

Footnotes

1    The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

2    The cited page numbers for this document refer to those generated by ECF.

---

**End of Document**                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3736794
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,

v.

P.A. SWITZ, Defendant.

Civ. No. 9:17-CV-1067 (LEK/DJS)
|
Signed 07/09/2018

**Attorneys and Law Firms**

JAVON HIGH, 16-R-2525, Queensboro Correctional Facility, 47-04 Van Dam Street, Long Island City, NY 11101, pro se.

HON. BARBARA D. UNDERWOOD, Attorney General of the State of New York, OF COUNSEL: ERIK BOULE PINSONNAULT, ESQ., The Capitol, Albany, NY 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** On September 25, 2017, *pro se* Plaintiff Javon High commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both Wyoming Correctional Facility and Ulster Correctional Facility, while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. In his Complaint, Plaintiff alleges that he suffers from chronic, severe pain, for which he was prescribed certain medications. Compl. at p. 3.[1] Plaintiff alleges that while at Ulster, he was seen by P.A. Switz, who told Plaintiff that he would not be getting the physical therapy or prescribed medications at Ulster, and that he could attempt to when he got to his designated facility, which would not be for a month or two. *Id.* at pp. 4-5. Plaintiff then went thirty-five days with severe pain. *Id.* at p. 6. Plaintiff alleges continuing issues related to his pain and treatment after he was transferred to Wyoming.[2] *Id.* at pp. 6-19. Remaining in this District are Plaintiff's claims arising out of his confinement at Ulster, which are only those against Defendant Genevieve Switz.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint on the basis that Plaintiff failed to exhaust his administrative remedies before filing this action. Dkt. No. 13, Def.'s Mot. to Dismiss. Plaintiff has opposed the Motion. Dkt. No. 17, Pl.'s Opp. Defendant has filed a reply. Dkt. No. 18, Def.'s Reply. Plaintiff has filed an additional submission in opposition. Dkt. No. 19, Pl.'s Supp. Opp.[3]

The Court finds that Plaintiff failed to exhaust his administrative remedies, but that Plaintiff has demonstrated that the lack of exhaustion should be excused. The Court therefore recommends that Defendant's Motion be **denied**.

## I. LEGAL STANDARD

**\*2** On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984) ).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, n.6 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged, or that the defendants have violated ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se* complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c) ).

## II. EXHAUSTION

### A. Exhaustion Procedure

**\*3** The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116,

121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

**B. Plaintiff's Failure to Exhaust Administrative Remedies**

In this case, Plaintiff admits that the grievance procedure was not complete when he filed the Complaint because he had not received a response from CORC. Compl. at pp. 20-21. Plaintiff filed his initial grievance on January 20, 2017. Id. at p. 20. He received a response from IGRC on January 24, 2017, and forwarded his appeal to the Superintendent. *Id.* The Superintendent then issued a response on January 31, 2017. *Id.* On February 6, 2017, Plaintiff filed his appeal to CORC. *Id.* Per the regulations, CORC had thirty days to respond to the appeal. *Id.* On August 25, 2017, after not hearing from CORC, Plaintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court. *Id.* at pp. 20-21. When Plaintiff prepared his Complaint, on September 12, 2017, he had still not received any response from CORC. *Id.* Only after filing the Complaint did Plaintiff receive a final response from CORC. Pl.'s Supp. Opp. at p. 3 & Def.'s Reply at pp. 1-2 (indicating response from CORC was received in February 2018).

It is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies. The fact that his CORC appeal was decided after the filing of his Complaint is insufficient to cure Plaintiff's failure to exhaust; filing an Amended Complaint at this time would also not correct this fundamental deficiency. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, at *13 ("It is well established that [r]eceiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks omitted) (citations omitted).

**\*4** The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

**C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused**

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his Complaint and opposition papers, Plaintiff's main contention is that administrative remedies were unavailable to him because he did not receive a response from CORC for over seven months, and that there are no instructions on how to proceed with a grievance if no response is received from CORC. Pl.'s Opp. at p. 9 ("DOCCS policy has no re[c]ourse, does not inform nor direct what the next step would be if CORC does not render a decision. Leaving inmates to bel[ie]ve that if they receive no decision after the (30) thirty day period allowed in th[eir] own policy then they have exhausted remedies. Fac[t]ually and evident[i]ally, DOCCS simply does not state what we are to do after the thirty day timeline has expired. Certainly they cannot just leave the door open...."); *see also* Compl. at pp. 20-21; Pl.'s Supp. Opp. Defendant contends that an inmate must receive a response from CORC before filing a suit, and that a delay in receipt of a CORC decision beyond the thirty days proscribed by statute does not excuse an inmate's failure to exhaust his administrative remedies. Def.'s Reply.

Courts within the Second Circuit are split regarding whether a failure to respond by CORC constitutes unavailability excusing a plaintiff's failure to exhaust. *Compare Ford v. Smith*, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (finding plaintiff's failure to exhaust was not excused where CORC failed to issue a determination for six months) *and Lewis v. Hanson*, 2017 WL 4326084,

at *3 (N.D.N.Y. Sept. 28, 2017) *with Rossi v. Fishcer*, 2015 WL 769551 (S.D.N.Y. Feb. 24, 2015) (collecting cases deeming administrative remedies unavailable when officials failed to timely respond to a grievance), *Peoples v. Fisher*, 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in Federal Court simply because the final administrative decision maker has ... neglected ... to issue a final administrative determination."), *and Rodriguez v. Reppert*, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

**\*5** Here, Plaintiff filed his grievance with the IGRC; upon receiving an unfavorable determination, he appealed it to the Superintendent, and then appealed the Superintendent's determination to CORC. Compl. at pp. 20-21. The final step of the grievance procedure provides that CORC shall review the appeal and render a determination within 30 days from the time the appeal was received. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(2). At the preliminary stages of the procedure, the regulations provide an avenue for a grievant to further pursue a grievance that is not timely decided: "Absent [an] extension [on a time limit], matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g). However, the third and final step in the grievance procedure is "appeal to the central office review committee." *Id.* at § 701.5(d). At this level, there is no instruction on what a grievant is to do if he or she has appealed to the CORC, the final step, and has not received a response. *Id.* at § 701.6(g)(1)(b)(ii). As such, these regulations "do not describe a mechanism" for appealing or advancing a grievance when a grievant does not receive a response from CORC, as there is no next step to which a grievant may appeal. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

In the case of *Williams v. Corr. Officer Priatno*, the plaintiff had submitted a grievance but never received a response; he then filed a lawsuit without taking any further formal action regarding his grievance, believing it had never actually been filed by the special housing unit correction officer. 829 F.3d at 120-21. The Second Circuit found the grievance procedure was unavailable under *Ross*, meaning that the "administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 123. The Court found that, even though the plaintiff could have "technically" appealed his

grievance, "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.* at 124. As such, the Second Circuit found that, under *Ross*, "the grievance procedures that were technically available to [plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* at 126 (quoting *Ross v. Blake*, 136 S. Ct. at 1859).

Similarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance. *Id.*

Defendant cites to *Gizewski* for the proposition that even if a grievant does not receive a response to a grievance from CORC, the failure to exhaust is not excusable. In *Gizewski*, however, there was an administrative error in filing the grievant's appeal with CORC and Plaintiff never received a receipt from filing with CORC; the regulations explicitly provide a mechanism for confirming that an appeal has been properly filed if a grievant does not receive a receipt. As such, there was specific direction in the procedures for the grievant to follow. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, (N.D.N.Y July 5, 2016). As the Court there summarized:

> Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R. § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."

*Id.* at *13.

The Second Circuit Court of Appeals affirmed Chief Judge Suddaby's dismissal of Gizewski's Complaint. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 Fed. Appx. 668 (2d Cir. 2017). In doing

Case 9:17-cv-01050-GTS-ML     Document 43     Filed 11/14/18     Page 27 of 51

so, however, the Circuit noted that, "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670. Therefore, the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed. In the Court's view, and under the hopefully unique facts of this case, Plaintiff's failure to exhaust aligns more with *Williams* than with *Gizewski.* "[A]fter the CORC neglected to decide [the appeal], administrative remedies were no longer available" to Plaintiff. *Rodriguez v. Reppert,* 2016 WL 6993383, at *1.

**\*6** Accordingly, for the foregoing reasons, the Court recommends that Defendant's Motion be **denied** based upon a finding that Plaintiff's failure to exhaust is excused.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 13) be **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)* ); see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2018 WL 3736794

---

Footnotes

1    When referring to Plaintiff's submissions, the Court will cite to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System because they are often unnumbered or not numbered sequentially.

2    The claims regarding Plaintiff's treatment at Wyoming were severed and transferred to the Western District of New York upon initial review of the Complaint. Dkt. No. 8.

3    In his opposition filings, Plaintiff has included allegations that were not included in his Complaint. *See* Pl.'s Opp. at pp. 5-6. Federal Rule of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." FED. R.CIV. P. 12(d). The Court agrees with Defendant that Plaintiff's allegations that he was prevented from filing grievances should not be considered on a motion to dismiss as they are outside the pleadings. *See* Def.'s Reply at p. 2. Because a determination as to exhaustion can be made based on the face of the Complaint, the Court declines to convert the Motion to one for summary judgment, and will exclude and not consider the extrinsic evidence submitted by the parties.

4    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R.CIV. P. 6(a)(1)(C).

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6993383

2016 WL 6993383
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Juan Rodriguez, Plaintiff,
v.
C.O. Reppert, C.O. Osbourne,
and C.O. Testani, Defendants.

14-CV-671-RJA-MJR
|
Signed 11/30/2016

**Attorneys and Law Firms**

Juan Rodriguez, Dannemora, NY, pro se.

Kathleen M. Kaczor, Attorney General's Office, Buffalo, NY, for Defendants.

## DECISION AND ORDER

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

 *1 Magistrate Judge Roemer, to whom the Court referred this case for all pre-trial proceedings, filed a Report and Recommendation (Docket No. 19) recommending that the Court deny the Defendants' motion for summary judgment. See Docket No. 10. The Defendants have filed objections to that recommendation. Docket No. 20. Pursuant to 28 U.S.C. § 636(b)(1), the Court must review the Report and Recommendation de novo. Upon de novo review, and for the reasons stated below, the Court overrules the Defendants' objections and adopts the Report and Recommendation in its entirety.

## BACKGROUND

The Defendants argue that they are entitled to summary judgment because, they claim, the Plaintiff failed to exhaust his administrative remedies before bringing this case. It is undisputed that the New York State Department of Corrections and Community Supervision's (DOCCS) Central Office Review Committee (CORC)—the final level of review in DOCCS' internal grievance program—

did not decide the Plaintiff's appeals of his administrative grievances within the thirty-day period required by DOCCS' regulations. See 7 N.Y.C.R.R. § 701.5(d)(2)(ii). It is also undisputed that the Plaintiff filed his complaint in this case *before* the CORC decided his appeals. The CORC ultimately decided the Plaintiff's appeals two weeks after the Plaintiff filed his complaint in this case, but nearly two *months* after DOCCS' own regulations required the CORC to do so.

Relying primarily on the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), as well as the Second Circuit's decision in *Williams v. Priatno*, 829 F.3d 118, Judge Roemer concluded that the CORC's failure to timely decide the Plaintiff's appeals, combined with the absence of any "mechanism to request the CORC to issue a decision after thirty days have elapsed," Docket No. 19 at 7, meant that the Plaintiff's administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act (PLRA). See 42 U.S.C. § 1997e(a). Thus, Judge Roemer concluded, the Plaintiff did exhaust his administrative remedies.

## DISCUSSION

The PLRA's exhaustion "edict contains one significant qualifier: the [administrative] remedies" a prisoner is required to exhaust "must ... be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The Supreme Court has identified several scenarios in which an administrative remedy might be "[un]available" within the meaning of the PLRA. See *id.* at 1859-60. Judge Roemer concluded that one of those scenarios applies in this case: the Plaintiff here encountered "an administrative scheme" that is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.

The Second Circuit recently explained that this "opaqueness" exception to the PLRA's exhaustion requirement applies when "[t]he regulations simply do not contemplate the situation in which [the prisoner] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016). That is the case here: As Judge Roemer noted, "after the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file this action." Docket No. 19

at 7. In other words, there was simply nothing the Plaintiff could do to force the CORC to follow its own deadline for deciding the Plaintiff's appeals.

**\*2** The Defendants now argue that the Plaintiff "could have contacted the IGP Supervisor in writing if he did not receive a written notice of receipt from CORC within 45 days of his appeal." Docket No. 27 at 2. Specifically, the Defendants point to DOCCS Directive 4040(d)(3)(i) (codified at 7 N.Y.C.R.R. § 701.5(d)(2)(i)), which provides that, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to the CORC." *Id.* (citations omitted).

This argument, however, was made for the first time in the Defendants' reply brief before this Court; the Defendants did not raise the argument before Judge Roemer, nor did they raise it in their objections.[1] The Defendants have therefore waived the argument that § 701.5(d)(2)(i) provides a mechanism by which the Plaintiff could have prompted the CORC to decide his appeals. "The Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's ruling on a motion. Such sapience appears all the more prudent" where, as here, "the opposing party is proceeding *pro se*." *Peca v. Delta Air Lines, Inc.*, No. 97-CV-0882E(M), 2000 WL 914112, at \*2 (W.D.N.Y. July 7, 2000) (citations and quotation marks omitted). The Court will therefore not consider the Defendants' argument that § 701.5(d)(2)(i) makes Plaintiff's administrative remedies "available" within the meaning of the PLRA.

The Defendants also identify several other reasons why they believe Judge Roemer's Report and Recommendation was incorrect. The Court addresses each argument each in turn.

First, the Defendants argue that the Plaintiff's conduct in a case in the New York Court of Claims shows that he "could not ... argue that the grievance process was unavailable to him, unknowable, incapable of use, inaccessible, or practically impossible to navigate." Docket No. 20 at 5. But this argument misinterprets the PLRA's opaqueness exception as interpreted by the

Second Circuit in *Williams*: the question, according to the Second Circuit, is whether "[t]he regulations ... contemplate the situation in which [the prisoner] f[inds] himself." *Williams*, 829 F.3d at 124. This is an objective question: the regulations either provide an inmate with a procedural route to obtain administrative relief, or they do not. To be sure, an inmate's subjective understanding of the grievance procedure is one aspect of the opaqueness question; a procedural scheme that *does* provide a route to administrative relief is little better than *no* route if the administrative path the prisoner must follow is "so confusing that no reasonable prisoner can use them." *Ross*, 136 S. Ct. at 1869 (quotations and ellipsis omitted). *See also Williams*, 829 F.3d at 126 ("[T]he purported options for relief provided by defendants, to the extent they are even available to an inmate in [the plaintiff's] situation, only increase confusion regarding the avenues available to pursue an appeal.") Nothing in *Williams*, however, suggests that the opaqueness exception is categorically unavailable simply because, as here, the prisoner was familiar with his prison's grievance process.

**\*3** Second, the Defendants point to the Supreme Court's statement in *Ross* that, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 139 S. Ct. at 1859. Again, however, after *Williams*, the question in this case is whether an administrative option was even available to the Plaintiff in the first place—not whether the Plaintiff misunderstood a DOCCS regulation.

Third, the Defendants argue that Judge Roemer "chose ... to apply the minority [ ]view" on the question whether an untimely administrative decision renders the administrative process unavailable. But as Judge Roemer noted, the Defendants do not identify "any cases from the Second Circuit or the Western District of New York" supporting their position. Docket No. 19 at 8. To the contrary, the most recent Second Circuit case on point—*Williams*—states that administrative remedies are opaque—and, therefore, unavailable—when those remedies do not address the situation in which a prisoner finds himself. That is the case here.

Fourth, the Defendants rely heavily on the Supreme Court's statement in *Ross* that the unavailability of administrative remedies "will not often arise." But in context, the Supreme Court's statement says something

2016 WL 6993383

less forceful than the Defendants suggest: *Ross* states that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Ross*, 136 S. Ct. at 1859. This suggests that remedies will typically not be unavailable under the PLRA because prisons have an obvious interest in resolving administrative grievances internally. This interest is best served by maintaining a grievance scheme that actually provides a route to administrative relief. *Ross*, in other words, assumes that administrative remedies will "not often" be unavailable because *Ross* also assumes that prisons will maintain remedial processes that provide prisoners with a path for obtaining administrative relief.

Finally, the Defendants argue that, "if Magistrate Judge Roemer's decision is adopted, inmates can file suit anytime the IGP, a Superintendent, or the CORC is late in rendering a decision. In fact, if adopted, inmates could wait until one day after the time periods stated in the NYCRR and file suit." Docket No. 20 at 15. This overstates Judge Roemer's conclusion. Nothing in Judge Roemer's Report and Recommendation suggests that a failure to timely decide an inmate grievance at a *lower level* of the grievance review process would permit a prisoner to immediately file a federal lawsuit. This is because DOCCS' regulations expressly contemplate such a situation: they provide that, absent an extension of time, "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). In other words, a failure to render a timely decision at a lower level in the grievance process gives a prisoner the option of appealing that inaction to the next level. A prisoner who does not avail himself of that option will almost certainly find his lawsuit dismissed for failure to exhaust. *See, e.g.*, *Morrison v. Stroman*, 12-CV-542(A)(M), 2014 WL 6685510, at *4 (W.D.N.Y. Nov. 26, 2014). But the CORC's failure to timely decide an appeal is fundamentally different than,

for instance, a superintendent's failure to timely decide an appeal, because the CORC is the final step in DOCCS' internal grievance program. A prisoner whose CORC appeal was not timely decided has no other administrative body to which he can appeal. Thus, the "regulations simply do not contemplate" what the prisoner should do to ensure his appeal is timely decided, "making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124.[2]

**\*4** Thus, upon *de novo* review, the Court overrules the Defendants' objections to Judge Roemer's Report and Recommendation.

Lastly, the Plaintiff objects to Judge Roemer's decision to "stay defendants' time to answer the complaint until the District Judge renders a decision" on the Defendants' motion for summary judgment. Docket No. 19 at 9. This non-dispositive order is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). The Court therefore overrules the Plaintiff's objections.

### CONCLUSION

For the reasons stated above, the Court overrules both the Plaintiff's and the Defendants' objections to Judge Roemer's Report and Recommendation. As directed by Judge Roemer, the Defendants shall answer the complaint within 21 days of this Decision and Order. This case is remanded to Judge Roemer for further proceedings.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6993383

---

Footnotes

1    The Defendants state that they made this argument for the first time in their reply brief because "[i]n response to defendants' objections to the R&R, plaintiff—for the first time—argues that the grievance process was 'opaque' and 'incapable of use.' " Docket No. 27 at 2. The Defendants overlook that *Judge Roemer* concluded that the grievance process was opaque and incapable of use. Thus, the Defendants could—and should—have made this argument in their objections to Judge Roemer's Report and Recommendation.

2    Because the Defendants have waived the argument, the Court does not address whether § 701.5(d)(2)(i) provides a mechanism for a prisoner to continue pursuing his grievance, thereby making his administrative remedies "available" under the PLRA. The Court notes, however, that this provision does not appear to address the situation in which the Plaintiff found himself. The Plaintiff does not suggest that he failed to exhaust because he was unsure whether the CORC

2016 WL 6993383

received his appeal. Rather, he failed to exhaust because the CORC did not timely decide the Plaintiffs' appeals. Nothing in the record suggests that the CORC failed to comply with the receipt-and-notice provisions of § 701.5(d)(2)(i).

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 7160117
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,

v.

David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958 (TJM/ATB).
|
Dec. 5, 2012.

**Attorneys and Law Firms**

Jesus Rodriguez, pro se.

Christopher W. Hall, AAG, for the Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

 *1 This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleges that defendant Rosner denied plaintiff constitutionally adequate medical care when he refused to prescribe orthopedic boots for plaintiff. (Compl. ¶ 6; Dkt. No. 1). Plaintiff subsequently filed a substantial number of documents in support of his complaint. (Dkt. No. 13). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl.¶ 8).

Presently before the court is defendant's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16). Plaintiff has responded in opposition to the motion to dismiss and has filed a separate motion for appointment of counsel. (Dkt.Nos.19, 20). For the following reasons this court will recommend granting defendant's motion and dismissing this action without prejudice to plaintiff re-filing the action. The court will also order the denial of plaintiff's motion for appointment of counsel without prejudice.

**DISCUSSION**

**I. *Facts***
In his complaint, plaintiff alleges that he is a Type II diabetic, who has had skin grafts taken from the soles of his feet, leaving him with abnormally thin skin on the bottom of his feet. (Compl. Facts ¶¶ 2–3). Plaintiff states that he is in constant discomfort due to his condition, and in May of 2011, while he was incarcerated at Oneida Correctional Facility, he was referred to Dr. Baldauf, a podiatrist, who determined that plaintiff suffered from plantar fascitis. (*Id.* ¶¶ 8–9). Plaintiff states that Dr. Baldauf recommended that plaintiff be fitted for orthopedic boots. (*Id.* ¶ 11). Impressions of plaintiff's feet were taken while he was still at Oneida, and the boots were ordered in July of 2011. (*Id.* ¶ 12).

Prior to receiving his boots, plaintiff was transferred to Watertown Correctional Facility, where he was examined by defendant Dr. Rosner. (*Id.* ¶¶ 13–15). Plaintiff states that he made several requests, but was never given the boots. (*Id.* ¶ 14). Dr. Rosner, who is not a podiatrist, conducted his own examination of plaintiff's feet and determined that plaintiff did not require orthopedic boots. (*Id.* ¶ 16). Plaintiff claims that the medical records supporting Dr. Baldauf's diagnosis and prescription of orthopedic boots was missing from plaintiff's file. (*Id.* ¶ 20). Plaintiff believes that defendant Rosner has intentionally destroyed or hidden these records. (*Id.* ¶ 21).

Plaintiff states that defendant Rosner refused to locate these records, even though plaintiff filed a grievance. (*Id.* ¶ 22). Plaintiff also claims that defendant Rosner "deflects" all investigations by stating that plaintiff refused new state-issued boots, but never mentions that these "new" boots were not the orthopedic boots that plaintiff had been prescribed at Oneida. (*Id* .¶ 23).

**II. *Motion to Dismiss***

  **A. Legal Standards**
 *2 To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp., 550 U.S. at 555).* Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp., 550 U.S. at 555* (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)* (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir.1995).* The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir.2005); Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir.1999)* (*per curiam* ).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp., 550 U.S. at 555).* Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp., 550 U.S. at 555* (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)* (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir.1995).* The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir.2005); Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir.1999)* (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d at 72* (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

**B. Application**

**\*3** Subsequent to the filing of his complaint, plaintiff submitted documents in support of the complaint, including a substantial number of medical records, many of which address the issue of his request for special boots. (Dkt. No. 13). Among the records submitted by plaintiff are his grievance documents. (Dkt. No. 13 at 34–43). Plaintiff also included a complaint that he made to the New York State Department of Health, Office of Professional Misconduct,[1] regarding defendant's denial of orthopedic boots and a complaint to the New York State Office of the Inspector General. (Dkt. No. 13 at 44–47, 48). On October 25, 2012, plaintiff filed a letter, attaching a copy of the final response to his grievance by the Central Office Review Committee. (Dkt. No. 15). This court may consider all of the documents attached to the complaint, or submitted in conjunction with the complaint in its decision, although it need not consider all of them in order to decide this motion.

**III.** *Exhaustion of Administrative Remedies*

**A. Legal Standards**
The Prison Litigation Reform Act, (PLRA), *42 U.S.C. § 1997e(a)*, requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord, 380 F.3d 670, 675–76 (2d Cir.2004)* (citing *Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)* (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103. In *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Second Circuit specifically held that completion of the administrative review process includes receiving the decision on the final appeal of a grievance prior to filing the federal action.

*4 The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[2] Based on these cases, the Second Circuit developed a "three part

inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies are available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011).[3]

### 2. Application

Defendant argues that plaintiff has admittedly failed to exhaust his administrative remedies. In his complaint, signed on June 10, 2012, and filed on June 13, 2012, plaintiff states that he filed his grievance on April 2, 2012, received an adverse decision and appealed to the Superintendent on April 26, 2012. (Compl.

¶ 4(b)(i)). Plaintiff states that he appealed the Superintendent's decision to the CORC on May 4, 2012, but that "[n]o decision [was] rendered to date." (*Id.* ¶ 4(b)(ii)). Plaintiff specifically states that the "appeal [is] still pending at CORC in Albany." (*Id.*) Thus, at the time plaintiff filed his complaint, he had not exhausted his administrative remedies.

In the complaint, plaintiff cited no reason for failing to wait for the CORC's decision. The first two *Brownell* factors do not apply to this case. Plaintiff does not claim that the grievance procedure was not "available," nor does he claim that defendant's actions prevented plaintiff from utilizing the available procedures. Thus, the court must consider whether there are "special circumstances" justifying plaintiff's failure to exhaust. Based on the facts in this case, the inquiry will be whether there are special circumstances justifying plaintiff's failure to await the CORC decision.

*5 Plaintiff ultimately received a decision by the CORC, dated September 26, 2012, accepting his grievance to the extent that "a referral was submitted for a consult for

special boots for the grievant on 9/18/12." (Dkt. No. 15). Plaintiff filed the CORC decision with the court on October 25, 2012. (*Id.*) While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. 267 F.3d at 122–23.

In plaintiff's response to the motion to dismiss, he argues that he did everything he could to exhaust his remedies, and that he should be excused from obtaining the final decision of the CORC because he had already filed the appeal to the CORC when he filed his federal action, and there were "extenuating medical circumstances." (Dkt. No. 19 at 1–2). The court understands that plaintiff claims he was in pain, however, he received the CORC decision before the court even had an opportunity to rule on any of the merits of his claims. Thus, plaintiff's premature filing of this federal action did not benefit plaintiff or solve his medical problem. The CORC noted that plaintiff was referred for his medical boots in September of 2012. In fact, if plaintiff had waited, he would not have had to request injunctive relief because it appears that he will be afforded his special boots if medically appropriate.

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action for damages because he has now exhausted his remedies. As in *Neal*, plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance

system at the outset." *Id.* The scenario envisioned by the court in *Neal* occurred in this case, even before the CORC accepted the grievance because plaintiff received the referral to the specialist in September of 2012. This is true, notwithstanding that plaintiff may still file a complaint for damages alone if he chooses to do so.

### IV. *Appointment of Counsel*
Because this court is recommending dismissal without prejudice at this time, plaintiff's motion for appointment of counsel (Dkt. No. 20) is denied as moot. If plaintiff re-files his action, he may request appointment of counsel at the appropriate time.

**WHEREFORE,** based on the findings above, it is

**\*6 RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED WITHOUT PREJUDICE TO REFILING,** and it is further

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED AS MOOT AT THIS TIME.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 7160117

Footnotes

1    This set of documents includes plaintiff's complaint, the Department's response, plaintiff's letter objecting to the Department's conclusion, and the Department's review of its action. (Dkt. No. 13 at 44–47).

2    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380

F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

3    This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates.*" *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

---

**End of Document**                                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01050-GTS-ML    Document 43    Filed 11/14/18    Page 37 of 51

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

2017 WL 1187859
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Superintendent LEMPKE, et al., Defendants.

9:10-CV-1524
|
Signed 03/30/2017

**Attorneys and Law Firms**

George H. Lowe, Upnit Kaur Bhatti, Bond, Schoeneck Law Firm, Syracuse, NY, for Plaintiff.

Eon Shepherd, Romulus, NY, pro se.

Cathy Y. Sheehan, New York State Dept. of Corrections, Auburn, NY, Oriana L. Carravetta, New York State Attorney General, Albany, NY, for Defendants.

## DECISION & ORDER

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge, for the purpose of holding an evidentiary hearing and issuing a report and recommendation addressing exhaustion of administrative remedies. In his October 28, 2016 Report and Recommendation, Dkt. No. 252, Magistrate Judge Peebles provides a thorough review of the numerous claims in this matter that are based on events occurring between April 2008 and November 2010 at five separate prison facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS"), [1] and of the procedural history of this case. [2] Magistrate Judge Peebles also placed the claims potentially implicated by defendants' exhaustion defense, together with the circumstances surrounding plaintiff's efforts to exhaust available administrative remedies, into four groupings, "each of which includes common circumstances insofar as exhaustion is concerned." Rep. Rec. p. 13.

Based upon the evidence adduced at the hearing, Magistrate Judge Peebles recommends:

(1) The following claims should be deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*2** (2) The following claims proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued asHawthorne) | Medical Indifference | Clinton |

(3) The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 1 | Evans | ReligiousInterfer. | Five Points | |

(4) The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amende Complaint ¶ |
| --- | --- | --- | --- | --- |
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

and,

(6) The matter should be set down for trial involving the remaining claims.

Plaintiff filed objections through appointed counsel, Dkt. No. 253, and on a *pro se* basis, Dkt. No. 255; and defendants filed objections. Dkt. No. 254.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Frankel v. N.Y.C.*, 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections

Case 9:17-cv-01050-GTS-ML   Document 43   Filed 11/14/18   Page 40 of 51

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

### 1. Post-Commencement Exhaustion

**\*3** Plaintiff objects through counsel and on a *pro se* basis to Magistrate Judge Peebles's conclusion that plaintiff's claims that were exhausted after the action was commenced but before an amended complaint was filed ("Group Two", Claim Nos. 6, 36, 37 and 38) are nonetheless unexhausted under the holding of *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Plaintiff argues that although the Second Circuit stated in *Neal* that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal," the Circuit's decision did not specifically address situations where, as here, a claim is exhausted after commencement but prior to the filing of an amended complaint. Pl. Obj., p. 2. The Court finds no basis to reject Magistrate Judge Peebles's conclusion in this regard.

As Magistrate Judge Peebles explained:

> It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at \*2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

Rep. Rec. p. 21, n. 16.

Thus, Magistrate Judge Peebles concluded that "[w]hile some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise." *Id.* p. 22 (citing *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)). The Court agrees with Magistrate Judge Peebles's conclusion. Moreover, the courts in this District have almost uniformly held that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted); *see Thousand v. Corrigan*, 2017 WL 1093275, at \*3 (N.D.N.Y. Mar. 23, 2017)(quoting *Guillory*); *Reid v. Marzano*, 2017 WL 1040420, at \*2 (N.D.N.Y. Mar. 17, 2017)(quoting *Guillory*); *Kearney v. Gebo*, 2017 WL 61951, at \*2 (N.D.N.Y. Jan. 4, 2017)(quoting *Guillory*); *Toliver v. Fischer*, 2016 WL 3351974, at \*4 (N.D.N.Y. Mar. 22, 2016)(quoting *Guillory*), report and recommendation adopted *sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Klein v. Fischer*, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.")(citing *Kasiem v. Switz*, 756 F. Supp.2d 570, 575 (S.D.N.Y. 2010) in turn citing *Neal*, 267 F.3d at 122); *see also Stimpson v. Comm'r Correction Off.*, 2017 WL 326314, at \*2 (D. Conn. Jan. 23, 2017).[3] The Court finds that under *Neal*, post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. Thus, plaintiff's objection on this ground is overruled.

### 2. Challenge to Credibility Assessment

**\*4** With respect to Groups 3 and 4, Magistrate Judge Peebles recommended dismissal of claim nos. 5, 7, 9, 12, 14, 24, 29, 30 and 33, because he did not find plaintiff's testimony relative to exhaustion of those claims to be credible. Rep. Rec. at 26, *see id.*, pp. 24-26.[4] Plaintiff argues through counsel that because the Court must conduct a *de novo* determination when objections are filed, the Court has discretion to conduct its own hearing in order to make its own assessment of credibility.

Plaintiff himself, in his *pro se* submission, also challenges Magistrate Judge Peebles's credibility determinations, arguing that all of his testimony should have been deemed credible.

**\*5** Neither plaintiff's counsel nor plaintiff himself has presented sufficient reasons for the Court to exercise its discretion and conduct its own hearing. Because Magistrate Judge Peebles was in a position to view plaintiff's testimony and assess his credibility based on his demeanor and in light of the other evidence presented in the case, *see* Rep. Rec. 24-26, and because plaintiff has not presented sufficient reasons to conclude that Magistrate Judge Peebles erred in his credibility determination, the Court adopts those determinations and overrules plaintiff's objection on this ground.

### 3. Burden of Proof

Plaintiff argues in his *pro se* submission that Magistrate Judge Peebles improperly placed the burden upon him to prove that he exhausted his administrative remedies. There is no merit to this contention. As Magistrate Judge Peebles explained, the Prison Litigation Reform Act imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, including a mandatory requirement that the inmate exhaust his administered of remedies. While exhaustion is a condition precedent to bringing suit by an inmate, Magistrate Judge Peebles indicated that "[i]n the event *a defendant establishes* that the inmate plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal." Rep. Rec., p. 8 (emphasis added). In light of this statement clearly placing the burden on the defendants to establish plaintiff's failure to comply with administrative exhaustion procedures, plaintiff's objection on the ground that he was required to prove exhaustion in the first instance is disingenuous. The objection is overruled.

### b. Defendants' Objections

### 1. Claim 4 against Artus

Claim 4 is a religious freedom claim in Group One against defendant Artus stemming from incidents spanning from October-December 2009 at Clinton Correctional Facility. Defendants argue that because plaintiff's grievance list from 2009 at Clinton Correctional Facility reveals only two grievances, neither of which asserted denial of religious freedom, he could not have exhausted his administrative remedies on this claim. Def. Mem. Law, p. 2. For the reasons that follow, the objection is overruled.

Magistrate Judge Peebles addressed defendants' contention that plaintiff failed to exhaust the available administrative remedies against defendant Artus (as well as against defendants Colvin and Lempke) on the Group One claims because plaintiff did not file any grievances that specifically identified Artus or complained of his conduct. In denying the argument, Magistrate Judge Peebles correctly recognized that "the weight of authority ... suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability)." Rep. Rec. p. 19 (citing, *inter alia*, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.")(interior quotation marks and alteration omitted)). However, Magistrate Judge Peebles also indicated in a footnote: "In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations." Rep. Rec. p. 19, n. 15. Thus, defendants appear to be raising an issue that was not presented to Magistrate Judge Peebles.

**\*6** While the question of "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit, ... [s]ome courts in this circuit have stated, as a general matter, that a 'party waives any arguments not presented to the magistrate judge.' *Levy v. Young Adult Institute, Inc.*, 2015 WL 1958889, at \*4 (S.D.N.Y. Apr. 30, 2015). Other courts have held that district courts should not consider belatedly

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

made arguments because doing so negates "efficiencies gained through the Magistrates Act and would permit litigants to change tactics after the issuance of [a report and recommendation]." *Amadasu v. Ngati,* 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). District Judge D'Agostino has held that "[l]egal arguments may not be raised for the first time in an objection." *Lewyckyj v. Colvin,* 2014 WL 3534551, at *2 (N.D.N.Y. July 17, 2014)(citing *Abu–Nassar v. Elders Futures. Inc.*, 1994 WL 445638, *5 n. 2 (S.D.N.Y. Aug. 17, 1994))("If the Court were to consider ... untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.").

The Court finds that the defendants have waived the argument that plaintiff's grievances from 2009 at Clinton Correctional Facility failed to assert the basis of a denial of religious freedom claim against Artus. Defendants could have raised the argument before Magistrate Judge Peebles who conducted an extensive review of the claims in this matter and a thorough fact-finding hearing. To allow defendants to raise the matter now would undermine the authority of Magistrate Judge Peebles, negate the judicial efficiencies gained through the report and recommendation procedure, and seemingly allow defendant to raise a new argument in a forum that does not ordinarily invite adversarial responses. Moreover, defendants failed to attach to their objections the two grievances to which they refer, nor do they point the Court to where in the record the grievances could be found. Thus, efficiency and fairness does not militate in favor of considering the matter now. Still further, the defendants fail to provide any reason why the issue was not raised before Magistrate Judge Peebles, and the Court does not find that manifest injustice will result if the new argument is not considered. Accordingly, defendants' objection in this regard is overruled.

### 2. Claims against Colvin & Lempke

Claims 16, 17, and 18 against defendant Colvin, and claims 26, 27, 28 against defendant Lempke, are for excessive use of force, denial of religious freedom, and retaliation allegedly occurring at Upstate Correctional Facility. *See* Am. Comp. ¶¶ 86, 105 and 108. Defendants argue that because (1) the Amended Complaint "generally reads in chronological order; (2) paragraph 86 is

embedded in the section entitled "Denial of Medical Care;" and, (3) paragraph 86 encompasses paragraphs 62-109, "it is clear from reading this section of the amended complaint as a whole that plaintiff is referring to a time period prior to, or at most, to June 22, 2010. This is such because the subsequent paragraph, 87, clearly begins with allegations stemming from June 22, 2010." Def. Mem. L. p. 2. Defendants further assert that "Plaintiff's movement history shows that between August 7, 2009 and June 22, 2010, he was not housed at Upstate. *Id.* From this, defendants argue that because "supervisors cannot be liable for the conduct, policies or procedures of staff at a different facility," *id.,* Colvin and Lempke cannot be held responsible for claims 16, 17, 18, 26, 27, and 28. *See id.* ("[I]rrespective of whether [plaintiff] filed grievances regarding the underlying claims contained in paragraph 86, plaintiff's claims against Colvin and Lempke are misplaced in their capacity as supervisors because these defendants could not have had any control over the conditions in another facility, and therefore they were not personally involved."). Thus, defendants contend that the Court should "dism iss these claims against Colvin and Lempke." *Id.*

**\*7** Defendants' argument is not addressed to Magistrate Judge Peebles's recommendation that dealt with whether plaintiff exhausted his administrative remedies, but rather to whether claims 16, 17, 18, 26, 27, and 28 are legally viable. Because this objection is not addressed to an alleged error by Magistrate Judge Peebles in recommending whether plaintiff exhausted administrative remedies, but rather appears to be an attempt to convert a 28 U.S.C. § 636(b)(1) objection into a Rule 56 summary judgment motion, the objection is overruled. Defendants can challenge the sufficiency of these claims at the time of trial.

### 3. Claims against Artus, Colvin, and Lempke

Defendants make similar arguments addressed to the legal sufficiency of claims brought against Artus, Colvin, and Lempke in paragraphs 105 and 108. For the reasons discussed above, defendants' objections in this regard are overruled. Again, defendants can challenge the sufficiency of these claims at the time of trial.

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

#### 4. Claims 15, 20, 23, and 32

Claims 15, 20, 23, and 32 against Defendant Prebalick, Cioffa, Evans and Jones allege excessive use of force and the failure to protect on May 6, 2010. With regard to administrative exhaustion of these claims, Magistrate Judge Peebles found:

All of these claims relate to the same incident that allegedly occurred on May 6, 2010, and involved the use of force by defendants Prebalick, Cioffa, and Evans. Dkt. No. 45 at 5. Plaintiff also alleges that defendant Jones was present for, and failed to protect him from, the use of force. *Id.* In support of plaintiff's contention that he filed a grievance, dated May 7, 2010, regarding the excessive force and failure to protect claims asserted against defendants Prebalick, Cioffa, Evans, and Jones, plaintiff adduced, *inter alia*, a letter he addressed to Karen Bellamy, the DOCCS Director of Inmate Grievance, dated August 13, 2010, inquiring about the status of "several grievances [he had filed] in May 2010[.]" Exhs. P-E-6, P-G-6. Bellamy responded to plaintiff in a letter dated September 22, 2010, pointing out that her review of prison records demonstrated that plaintiff had filed six grievances at Five Points in May 2010. Exhs. P-E-7, P-G-7. By the time plaintiff sent his letter to Bellamy on August 17, 2010, he had received a response to five other grievances he had filed in May 2010. Exhs. D-7, D-8, D-9, D-10, D-11. It remains a mystery why some of the grievances filed by plaintiff at Five Points in May 2010 were processed but not the grievance allegedly relating to the incident involving defendants Prebalick, Cioffa, Evans, and Jones on May 6, 2010. One possible explanation is that plaintiff did not actually file a grievance. Another possibility is that, assuming plaintiff filed the grievance, prison officials interfered, intentionally or not, in a manner that resulted in plaintiff's grievance never being processed. Unlike plaintiff's testimony regarding other claims in groups three and four, his testimony regarding claims 15, 20, 23, and 32 is accompanied by his letter to Bellamy, which is stamped as having been received by Bellamy's office, and Bellamy's response to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7. Because the contents of those letters plausibly suggest that plaintiff's grievance related to the incident on May 6, 2010, involving defendants Prebalick, Cioffa, Evans, and Jones was submitted but never processed,

I have credited plaintiff's testimony regarding the claims arising from that incident only. Accordingly, I recommend defendants' motion to dismiss be denied with respect to claims 15, 20, 23, and 32.

**\*8** Rep. Rec. pp. 28-29.

Defendants argue, *inter alia*, that "[a]lthough the last line of plaintiff's letter to Bellamy indicates 'please find the enclosed unanswered grievances,' and even affording plaintiff the benefit that the letters contained in [the various exhibits] are the enclosure he is referring to, plaintiff still falls short of proper exhaustion. Respectfully, [Magistrate Judge Peebles] did not address the next inquiry which is whether plaintiff appealed the non-response to the Superintendent." Def. Mem. L., p. 3.

In *Johnson v. Tedford*, 616 F. Supp. 2d 321 (N.D.N.Y 2007), the court indicated that "in light of the Second Circuit's [*Hemphill v New York*, 380 F.3d 680 (2d Cir. 2004) ] decision, several Southern District cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review." *Id.* at 326. However, and despite that the exceptional circumstance exception of *Hemphill* has recently been abrogated, [5] *Johnson* has been repeatedly distinguished by the Northern District. As Chief Judge Suddaby wrote in *Smith v. Kelly*, 985 F. Supp. 2d 275 (N.D.N.Y. 2013):

There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. After carefully reviewing this case law, the Court finds that the weight of authority (and better-reasoned authority) answers this question in the affirmative. The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), and the plaintiff adequately describes the failure

2017 WL 1187859

to process the grievance, there is something for the superintendent to review.

*Id.* at 281–82 (N.D.N.Y. 2013)(collecting cases).

**\*9** Based on the weight of authority, the Court agrees with defendants that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must itself be appealed to the next level, including the CORC, in order to properly complete the grievance process. *See Simmon v. Uhler*, 2015 WL 5655561, at *4 (N.D.N.Y. Sept. 24, 2015) ("[T]he failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process.")(citing *Pacheco v. Drown*, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp.2d at 281–82 & n. 8 (N.D.N.Y. 2013); *Goodson v Silver*, 2012 U.S. Dist. LEXIS 137177, at *11, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) (stating that "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process"); *Veloz v New York*, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that an inmate in the New York State system was required to appeal even if he did not get a response to allegedly misplaced or destroyed grievances).

The law is clear that simply writing letters to supervisory officials is insufficient to exhaust administrative remedies, *Simmon*, 2015 WL 5655561, at *4 n. 5 (citing *Perez v. Blot*, 195 F. Supp.2d 539, 544-45 (S.D.N.Y. 2002) (citing cases)); *Masas v. Conte*, 2015 U.S. Dist. LEXIS 50527 (N.D.N.Y Mar. 25, 2015), so plaintiff's letter to Bellamy does not satisfy his exhaustion obligation. Moreover, there is no evidence that plaintiff, "an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate," Rep. Rec. 2, who undoubtedly was familiar with the grievance and appeal process, *see* Hear Tr. pp. 113:15 – 116:6, [6] 128:21-129:4, [7] Def. Post-Hearing Mem. L. p. 10, [8] appealed the non-response to his grievance addressed to the facts underlying claims 15, 20, 23, and 32 against Prebalick, Cioffa, Evans and Jones. Accordingly, these claims are dismissed for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the reasons discussed above, Magistrate Judge Peebles's October 28, 2016 Report and Recommendation, Dkt. No. 252, is accepted in part and rejected in part, as follows:

(1) The following claims are deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05,108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05,108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

| 34 | Prebalick | Excessive Force | Five Points | 35 |
|----|-----------|-----------------|-------------|-----|
| 35 | Ramus | Due Process | Five Points | 107 |

**\*10** (2) The following claims will also proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
|-----------|-----------------|-----------------|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims are dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|-----------|-----------------|----------|----------------------|
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | ReligiousInterfer. | Five Points | 32 |

(4) The following claims are dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|------|-----------------|----------|----------------------|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims are dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |

The Court Clerk's Office shall now schedule three trials for the remaining claims in accordance with the Court's September 22, 2015 Decision and Order, Dkt. No. 202, taking into account claims and defendants that are dismissed from the action by this Decision and Order. To aid the Court Clerk's Office in scheduling these trials, each part shall submit, within thirty (30) days, a status letter indicating the claims and defendants that remain pending and that they contend should be tried in each of the trials ordered by the Court on September 22, 2015, Dkt. No. 202.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1187859

Footnotes

1    "Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care." Rep. Rec. p. 3.

2    Part of this procedural history is that the Court adopted Magistrate Judge Peebles's previous recommendation to grant defendants' motion that plaintiff's claims be divided into three categories with each group being tried separately. *See*

Case 9:17-cv-01050-GTS-ML Document 43 Filed 11/14/18 Page 47 of 51

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

Rep. Rec. p. 6; *see also* Dkt. No. 202. At the time this decision was entered, the three groups anticipated for purposes of trial were:

(1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.

(2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.

(3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.

*See* Rep. Rec. p. 6; *see also* Dkt. No. 202.

3    ("[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. See *Woodford v. Ngo*, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. See *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit.")

4    In this regard, Magistrate Judge Peebles wrote:

Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery. Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed, according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33, all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

5    In *Ross v. Blake*, ––– U.S. –––– 136 S. Ct. 1850 (2016), the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. See *Ross*, 136 S. Ct. at 1856-57. *Ross* has been interpreted as abrogating the special-circumstances exception set forth in *Hemphill. See Riles v. Buchanan,* 656 Fed. Appx. 577, 581 (2d Cir. 2016)("Finally, to the extent Riles relies on our decision in *Hemphill* ... to argue that special circumstances excuse his failure to exhaust available remedies, that avenue has been foreclosed.")(citing *Williams v. Priatno*, 829 F.3d 118, 123, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016))(explaining that *Ross* abrogated the special-

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

Case 9:17-cv-01050-GTS-ML    Document 43    Filed 11/14/18    Page 48 of 51

2017 WL 1187859

circumstances exception and "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available").

**6**    Jeffrey Hale, Assistant Director of the Central Office Review Committee, testified at plaintiff's evidentiary hearing that there are safeguards in place in DOCCS' grievance process for inmates specifically for this type of situation, as plaintiff purports to be. Hear Tr. pp. 113:15 – 116:6. That is, if an inmate does not receive a response to a grievance, "[t]hey just write a simple note to the IGRC clerk or they can address it to the inmate grievance program supervisor requesting to appeal that grievance to the next level of review." Hear Tr. p. 113:15-23. Mr. Hale testified that inmates have a two week timeframe within which to file an appeal of a non-response to the Superintendent, and, in addition, inmates also have the same recourse for filing a late appeal as they would a timely appeal. *Id.* 114:9-115:25.

**7**    Mr. Hale testified that, at the time of plaintiff's hearing, plaintiff had successfully exhausted 445 grievances and had 6 appeals pending. Hear. Tr. pp.128:21-129:4.

**8**    Defendants contend that Plaintiff successfully exhausted an estimated 300 grievances at the time he filed this law suit. Def. Post-Hearing Mem. L., p. 10 (citing Hearing Ex. D-3).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   12

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1  *Pro se* plaintiff Kody Weidman ("Weidman" or
"Plaintiff"), an inmate in the custody of the New
York State Department of Corrections and Community
Supervision ("DOCCS"), instituted this action pursuant
to 42 U.S.C. § 1983, alleging that he was denied adequate
medical treatment in violation of his rights under the
Eighth Amendment. Defendant has moved to dismiss the
complaint on the basis that Weidman has failed to exhaust
his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court
accepts as true for purposes of this motion to dismiss
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure ("Rule 12(b) (6)"). *E. g., Jaghory v. New York
State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997)
(citations omitted). On September 3, 2012, Plaintiff was
bitten on his left cheek by a spider. He reported it and
was sent to sick call. However, the head nurse refused to
treat him, and as a result, his left cheek "swell[ed] up and
start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4.
Plaintiff contacted "D.I. Delmani", who in turn contacted
"the sgt", who took him to the hospital at Lakeview on
September 6, 2012. *Id.* There, Plaintiff was seen by a
doctor who gave him "sulfamethox" and applied a heat

pack to his face. The "pus and swelling then went down."
*Id.*

Plaintiff did not file a grievance but instead proceeded
directly to this Court, filing his complaint on September
14, 2012. Defendants filed a motion to dismiss on March
18, 2013. The complaint was dismissed for failure to
prosecute on June 19, 2013, but was reinstated on June
25, 2013. The matter was transferred to the undersigned
on February 20, 2014. For the reasons set forth below,
the motion to dismiss is granted, and the complaint is
dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's
complaint that he has failed to exhaust his administrative
remedies by filing a prison grievance, and therefore his
complaint warrants dismissal pursuant to Rule 12(b)(6).
In response to Defendant's non-exhaustion argument,
Plaintiff simply restates the basis for his grievance as his
reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"),
Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an
inmate to exhaust all available administrative remedies
before filing suit in federal court. Specifically, Section
1997e(a) of Title 42 U.S.C. provides that "[n]o action
shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available
are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court
has ruled that the exhaustion requirement "applies to
all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether
they allege excessive force or some other wrong[,]" *Porter
v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d
12 (2002).

 *2  It is well established that exhaustion requires that
"a prisoner must grieve his complaint about prison
conditions up through the highest level of administrative
review" before filing suit. *Porter v. Goord,* No. 01 Civ.
8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June
28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d
Cir.2001) ("[G]rievances must now be fully pursued prior
to filing a complaint in federal court."); other citation

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

### B. Analysis

*3 Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

2014 WL 1056416

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam* ) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, *5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

### **\*5 IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.